**Dated: June 28, 2006**

**The following is ORDERED:**



_____
Tom R. Cornish
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| **FIVE STAR ROOFING, INC.** | ) | Case No. 03-74415 |
| | ) | Chapter 11 |
| | ) | |
| **GARY N. CLAY** | ) | Case No. 03-74414 |
| **THERESA S. CLAY** | ) | Chapter 11 |
| | ) | |
| | ) | Substantively Consolidated Under |
| Debtors, | ) | Case No. 03-74415 |
| | ) | |
| **FIVE STAR ROOFING, INC.,** | ) | |
| **GARY N. CLAY, and** | ) | |
| **THERESA S. CLAY** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Adv. No. 05-7052 |
| | ) | |
| **GEORGE PAUL GLOVER** | ) | |
| **d/b/a YOUNGMAN ROCK** | ) | |
| | ) | |
| Defendant. | ) | |

EOD 6/28/06 by cc

# **O R D E R**

On the 8th day of May, 2006, the above-referenced adversary came on for trial. Appearances were entered by Pat Malloy, Attorney for Plaintiffs, and Justin Stout, Attorney for Defendant. After reviewing the testimony and evidence, this Court does hereby enter the following findings and conclusions in conformity with Rule 7052, Fed. R. Bankr. P., in this core proceeding.

Plaintiffs commenced this adversary proceeding on April 13, 2005, seeking a determination of the value and extent of Defendant's alleged secured claim pursuant to 11 U.S.C. § 506. The parties stipulated to the following facts, as provided in the Pre-Trial Order entered April 27, 2006:

1. The Defendant is owed the sum of $22,530.00.

2. The Defendant filed a mechanics lien against the property on May 20, 2003, for material furnished to the subject property between the dates of March 31, 2003, and May 20, 2003.

3. That IBC Bank (IBC) filed its mortgage against the subject property on March 28, 2003.

4. That as of the date these proceedings were commenced, IBC was owed the sum of $961,784.75.

5. That as of the date of plan confirmation, IBC was owed the sum of $962,784.75.

6. The defendant's lien is junior to the lien of IBC.

The property at issue is real estate in Muskogee, Oklahoma, that is used to operate the Debtors' racetrack known as Outlaw Motor Speedway. Defendant asserts he holds a valid secured claim in the amount of

2

$22,530.00 by virtue of the Mechanic's Lien. While Plaintiffs do not contest the amount owed to Defendant, Plaintiffs contend that the value of the property does not exceed the amount due and owing to IBC. Therefore, Plaintiffs argue, Defendant's claim should be allowed as a general unsecured claim. Defendant asserts that the value of the property does exceed the amount owed to IBC.

Section 506(a)(1) of the Bankruptcy Code provides:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest ... is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property ... and is an unsecured claim to the extent that the value of such creditor's interest ... is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed distribution or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

11 U.S.C. § 506(a)(1). The Supreme Court in *Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 117 S.Ct. 1879, 1885 (1997) held that the "replacement value" was the appropriate standard for valuing property when the debtor proposes to retain the property. The "replacement value" is defined as "the price a willing buyer in the debtor's trade, business, or situation would pay to obtain like property from a willing seller." *Id.* at 1884. In valuing real property in light of the *Rash* decision, one court noted: "the appropriate measure of value is what it would cost the debtor to purchase this, or like, property. In other words, 'value' means fair market value without any reduction for the cost of sale." *In re Pepper,* 210 B.R. 480, 486 (Bankr. D. Colo. 1997).

Exhibit L of Plaintiffs' Third Amended Disclosure Statement, filed August 18, 2005, is a balance sheet that values the property at $850,000.00. The Disclosure Statement was approved on September 8, 2005, and the Third Amended Chapter 11 Plan was confirmed on October 28, 2005. Plaintiffs assert that Defendant is now estopped from contesting the value listed in the Disclosure Statement. However,

the Disclosure Statement and the Plan also provide the payment terms of Defendant's claim in the event it is determined that Defendant is a secured creditor. "A determination of the amount of a secured claim in one aspect of a bankruptcy proceeding is not necessarily *res judicata* in other aspects of that proceeding." *Fairchild v. Lebanon Prod. Credit Ass'n (In re Fairchild),* 31 B.R. 789, 795 (Bankr. S.D. Ohio 1983). *See also, In re BBT,* 11 B.R. 224, 229 n.10 (Bankr. D. Nev. 1981) ("Of course, the value determined in the light of the purpose of vacating the automatic stay may not be the same as the value for another purpose such as confirmation of a plan."). This Court therefore finds that Defendant is not estopped from asserting a different value in the subject property.

There is disagreement between the parties as to the proper date upon which the property is to be valued. This Court is of the opinion that the petition date, November 3, 2003, is the proper valuation date in present case. *See In re Flagler-at-First Associates, Ltd.,* 101 B.R. 372 (Bankr. S.D. Fla. 1989). However, it appears to this Court to be insignificant whether the petition date or the plan confirmation date, October 28, 2005, is used as the valuation date.

An appraisal of the property was performed by Donald Wade, a certified general appraiser for commercial real estate. Mr. Wade has been an appraiser for twenty-two years. Mr. Wade is a member of the Appraisal Institute, and has served in various officer positions in his local Appraisal Institute chapter.

The effective date of the appraisal is February 11, 2004. When Mr. Wade performed the appraisal, the development on the property was not quite complete. The facility includes a 15,500 square foot concession building with box seats and an announcer's booth. The interior of the building was not finished at the time of the appraisal. There is a second concession building in the pit area which was also partially complete at the time of the appraisal. There is seating for 2,000 fans and additional seating for

4

racing crew.

Sales of other motor speedway operations were analyzed in conducting the appraisal. In addition to physically inspecting the property, Mr. Wade researched the cost of the equipment and facilities that were in place at the time of the appraisal.

An income capitalization approach was one of three approaches used in determining an estimated value for the subject property. Mr. Wade correlated the income that four other speedways received with the information regarding the sales of the properties. Throughout the appraisal, Mr. Wade assumed a stabilization of the business in the year 2006. In the income approach, Mr. Wade estimated gross income of $459,400.00 in 2004. Actual gross income for 2004 was $199,213.00. In his deposition, Mr. Wade stated that the lower figures for gross income would cause a decrease in value. Mr. Wade estimated gross income of $591,700.00 for 2005. The actual figures for March through May of 2005 were substantially similar to the 2004 figures. Mr. Wade estimated gross income of $724,000.00 for 2006. The estimated value using the income approach was $965,000.00.

The next approach utilized by Mr. Wade in his appraisal of the property is the cost approach. Mr. Wade compared income and expenses from four other motor speedways. He also compared land sales of property close to the subject property. The estimated value using the cost approach was $965,000.00.

The last approach used by Mr. Wade in his appraisal is the sales comparison approach. A stabilized value is used, and Mr. Wade made some estimates regarding future income. Mr. Wade also studied the sales of four other speedways in the sales comparison approach. The estimated value using this approach was $812,705.00, rounded up to $815,000.00.

Utilizing the three approaches, Mr. Wade's final estimated value of the subject property was

$915,000.00, as of February 11, 2004. In his appraisal, Mr. Wade deducted $150,000.00 for an 80-acre lot that was to be purchased by Plaintiffs for a parking lot. The lot is still not owned by Plaintiffs, and is actually being leased instead. Since the Plaintiffs have not purchased the 80-acre lot, the deduction of $150,000.00 is still accurate, and now there is the additional expense of leasing the lot.

Defendant argues that the value of the property is higher than the appraisal. Defendant submitted at trial several exhibits which he claims show a higher value for the property. These exhibits include: 1) an insurance policy with a limit of just over two million dollars; 2) Muskogee County's 2004 assessed value of the property of $1,126,189.00; 3) a newspaper article that reports Mr. Clay turned down an offer of $8,500,000.00 for the property; 4) a Right-to-Sell or Lease Listing Agreement where the property is listed at $5,000,000.00; and 5) a brochure that states "After the 2005 season OMS had a million dollar upgrade to the facility."

Plaintiffs argue that there is no evidence that significant improvements have been done since the appraisal. Plaintiffs also argue that the value of the property has decreased since the appraisal due to the low gross income numbers.

After thoroughly reviewing the evidence, this Court adopts the appraisal value of $915,000.00. The exhibits provided by Defendant are not persuasive in proving a higher value for the property. The appraisal, and the actual gross income figures for 2004 and 2005, are convincing indications of the property's value. Therefore, this Court determines the fair market value of the subject property to be $915,000.00.

IT IS THEREFORE ORDERED that the subject property has a fair market value of $915,000.00.

IT IS FURTHER ORDERED that Defendant's claim shall be allowed as a general unsecured claim.

### 

Case 05-07052    Doc 50    Filed 06/28/06    Entered 06/28/06 15:28:30    Desc Main
Document       Page 7 of 7